**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNION DE PASTEURIZADORES DE** | § | |
| **JUAREZ SOCIEDAD ANONIMA DE** | § | |
| **CAPITAL VARIABLE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-16-CV-137-KC** |
| | § | |
| **JORGE H. ZARAGOZA FUENTES,** | § | |
| **RODRIGO MENDOZA, and JOSE** | § | |
| **LUIS CHAPARRO AMPARAN,** | § | |
| | § | |
| **Defendants**. | § | |

## ORDER

On this day the Court considered Plaintiff's Motion to Remand and Request for Emergency Hearing ("Motion to Remand"), ECF No. 5, in the above-captioned case. For the reasons set forth below, the Motion is **GRANTED** in part. Plaintiff's request for remand and for attorney's fees and costs are **GRANTED**, and Plaintiff's request for an emergency hearing is **DENIED** as moot.

## I.     BACKGROUND

Defendant Jorge H. Zaragoza Fuentes ("Jorge Zaragoza") and his brother, Pedro Zaragoza Fuentes ("Pedro Zaragoza"), are the majority shareholders of Plaintiff Union De Pasteurizadores De Juarez Sociedad Anonima De Capital Variable, a family-owned dairy business that has been operating in the Mexico since 1986. *See* Original Pet. 10-11, Notice of Removal, Ex. 1, ECF No. 1.[1] Plaintiff alleges that Jorge Zaragoza and Pedro Zaragoza have attempted to negotiate a division of their family business and assets since 2009, and that these

---

[1] Because the Original Petition does not include page numbers, the Court refers to the page numbers created by the Court's electronic docketing system.

negotiations have been unsuccessful.  *Id.* at 11.  Plaintiff further alleges that on November 2, 2012, Defendants Rodrigo Mendoza and Jorge Zaragoza, as well as "others," forcibly took control of several of the dairy plants in Mexico, including Plaintiff's plant in Mexicali.  *Id.* at 12. Plaintiff asserts that the Mexicali plant still remains under the unlawful control of Jorge Zaragoza and Mendoza, and that Defendant Jose Luis Chaparro Amparan ("Chaparro")—an accountant who "worked as a comptroller for all of the Zaragoza family businesses"—now works for Jorge Zaragoza. *Id.* at 11.   *Id.* at 11-12.

Plaintiff further alleges that on April 14, 2015, Mexico's Servicio de Administración Tributaria, "the equivalent of the Internal Revenue Service (IRS) in the United States," commenced a tax audit of Plaintiff's accounts for 2013.  *Id.* at 13.  Plaintiff asserts that it attempted to comply with information that was requested by the Mexican government in connection with the audit, but that it was unable to supply some of the information requested because certain corporate documents that were previously housed in the Mexicali plant "were missing." *Id.*

As a result, on April 7, 2016, Plaintiff filed its Original Petition and Application for Temporary Restraining Order and Injunctive Relief in the 41st District Court of El Paso County, Texas. *See id.* at 9.  In the Original Petition, Plaintiff brought a conversion claim against Defendants Jorge Zaragoza, Mendoza, and Chaparro, and sought a temporary restraining order and injunctive relief requiring Defendants to give Plaintiff "possession of and unfettered access to" the corporate records needed to comply with the tax audit and barring Defendants from destroying any of the records. *See id.* at 22, 28.

On April 22, 2016, Defendants filed their Notice of Removal in this Court.  *See* Notice of Removal, ECF No. 1.  Shortly thereafter, on April 27, 2016, Plaintiff filed its Motion to Remand

arguing that the case should be remanded to state court because this Court lacks subject matter jurisdiction.  *See* Mot. to Remand.  Defendants timely responded to the Motion to Remand, *see* Defs.' Resp. to Pl.'s Mot. to Remand ("Resp."), ECF No. 8, and Plaintiff timely replied.  *See* Pl.'s Reply to Defs.' Resp. to Mot. to Remand, ECF No. 9.  On May 31, 2016, Plaintiff filed an Emergency Motion for Ruling on Plaintiff's Motion for Remand ("Motion for Ruling"), ECF No. 13.  *See also* Resp. to Mot. for Ruling, ECF No. 14; Reply re Mot. for Ruling, ECF No. 15.

## II.    DISCUSSION

### A.    Standard

"A defendant can remove to federal court any civil action brought in state court over which the district court would also have had original jurisdiction."  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1441(a)).  The district court is required to remand a case if, at any time before final judgment, it determines that it lacks subject matter jurisdiction.  *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (quoting 28 U.S.C. § 1447(c)).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Mumfrey,* 719 F.3d at 397; *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986). "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Mumfrey*, 719 F.3d at 397; *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

### B.     Analysis

Defendants present three theories regarding how this case arises under federal law such that this Court has subject matter jurisdiction over the case.  First, Defendants argue that Plaintiff's conversion and injunction claims raise "substantial questions of international law under federal common law."  *See* Resp. 1.  Next, Defendants argue that "the injunctive relief Plaintiff seeks necessarily implicates Mexican sovereign interests such that international law creates a federal question."  *See id.*  Finally, Defendants argue that this case involves a federal question because "the relief requested by Plaintiff necessarily involves interpretation of Mexican law."  *See id.*

In the Motion to Remand, Plaintiff argues that this case does not arise under federal law because the only issue involved in the case is whether Defendants committed the tort of conversion, an issue that is governed by state common law, not by federal law.  *See* Mot. to Remand 7.

### 1.     Federal question jurisdiction

Federal courts are courts of limited jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004).  Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S at 552; *People's Nat'l Bank*, 362 F.3d at 336 ("As courts created by statute, [federal courts] have no jurisdiction absent jurisdiction conferred by statute.").  "Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States."  *Exxon Mobil*, 545 U.S at 552 (citing 28 U.S.C. § 1331); *Merrell Dow Pharm.*

4

*Inc. v. Thompson,* 478 U.S. 804, 807 (1986). "[T]he question whether a claim 'arises under' federal law must be determined by reference to the "well-pleaded complaint.'" *Merrell Dow,* 478 U.S. at 808; *Leaumont v. City of Alexandria*, 582 F. App'x 407, 409 (5th Cir. 2014); *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997).

Under the well-pleaded complaint rule, federal district courts have jurisdiction over "only those cases in which a well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983); *Leaumont*, 582 F. App'x at 409; *Torres*, 113 F.3d at 543. "The fact that federal law may provide a defense to a state claim is insufficient to establish federal question jurisdiction." *Gutierrez v. Flores*, 543 F.3d 248, 255 (5th Cir. 2008) (quoting *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 550 (5th Cir. 2008)); *see Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("[A]n anticipated or actual federal defense generally does not qualify a case for removal.").

### 2. Federal common law of foreign relations

Plaintiff argues that its conversion claim does not implicate foreign relations because the lawsuit does not involve Mexico's economic or sovereign interests or the United States' relationship with Mexico. *See* Mot. to Remand 6. Plaintiff argues that, in fact, "[n]o governments, government property or relation of any governments are involved" in the lawsuit. *See id.* at 5.

The Fifth Circuit has held that a complaint can arise under federal law when it "raises substantial questions of federal common law by implicating important foreign policy concerns." *See Torres*, 113 F.3d at 543. Moreover, several other circuit courts have similarly held that the

federal common law of foreign relations can support federal question jurisdiction.  The Eleventh Circuit has stated federal question jurisdiction exists in cases "[w]here a state law action has as a substantial element an issue involving foreign relations or foreign policy matters."  *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1377 (11th Cir. 1998).  Similarly the Second Circuit held, in *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986), that "there is federal question jurisdiction over actions having important foreign policy implications."  *Id.* at 353-54 (finding that "[a]n action brought by a foreign government against its former head of state arises under federal common law because of the necessary implications of such an action for United States foreign relations").  *But see Patrickson v. Dole Food Co.*, 251 F.3d 795, 804-05 (9th Cir. 2001), *aff'd in part, cert. dismissed in part sub nom. Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ("Because we see no evidence that Congress meant for the federal courts to assert jurisdiction over cases simply because foreign governments have an interest in them, we must part company with our sister circuits.").

However, the Fifth Circuit has clarified that "[f]ederal jurisdiction based on the [federal] common law of foreign relations is limited in scope," and "federal jurisdiction does not attach to every suit that involves foreign nationals."  *Espinola-E v. Coahoma Chem. Co.*, 248 F.3d 1138, 2001 WL 85834, at *1 (5th Cir. 2001) (citing *Marathon Oil Co. v. Ruhrgas, A.G.,* 115 F.3d 315, 320 (5th Cir.), *rev'd on other grounds sub nom. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999); *Aquafaith Shipping, Ltd. v. Jarillas,* 963 F.2d 806, 808 (5th Cir. 1992)); *see also Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1348 (S.D. Tex. 1995), *aff'd,* 231 F.3d 165 (5th Cir. 2000) ("[N]ot every claim implicating the international law of foreign relations will give rise to federal question jurisdiction.").

Moreover, when removing on the basis of the federal common law of foreign relations, defendants must still demonstrate that they satisfy the well-pleaded complaint rule, in that the plaintiff's right to relief must depend on the resolution of a substantial question of federal law. *See Delgado*, 890 F. Supp. at 1348-49; *see also Marathon Oil*, 115 F.3d at 320 (explaining that *Torres*—in which the Fifth Circuit "found federal question jurisdiction based on the federal common law of foreign relations"—was "a very specific application of the well-pleaded complaint rule"); *see, e.g.*, *Torres*, 113 F.3d at 542-43; *Aquafaith Shipping,* 963 F.2d at 800-09.

### 3.     The case presents no federal question

Applying the well-pleaded complaint rule, the Court finds that this case does not arise under federal law and therefore does not present a federal question.  First, the cause of action—conversion—is created by state law, not federal law.  *See McKee v. Tex. Star Salon, LLC*, Civil Action No. 3:06-CV-879 BH, 2007 WL 2381246, at *3 (N.D. Tex. Aug. 21, 2007) ("Plaintiff's assertion of a wrongful conversion claim raises no question of federal law."); *Gaumond v. City of Melissa, Tex.*, 227 F. Supp. 2d 627, 633 (E.D. Tex. 2002) (noting that conversion is a state law claim and declining to exercise supplemental jurisdiction over conversion and other state law claims); *see also Gutierrez,* 543 F.3d at 252 (explaining that "[g]enerally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action" (quoting *Bernhard*, 523 F.3d at 551)).

Second, Defendants have not demonstrated that "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *See Franchise Tax Bd.*, 463 U.S. at 27-28.  Although Defendants argue that Plaintiff's conversion and injunction claims raise "substantial questions of international law under federal common law," *see* Resp. 1, they fail to point to—and the Court cannot discern—any international law at issue in this case.

Next, Defendants argue that Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law because "the injunctive relief Plaintiff seeks necessarily implicates Mexican sovereign interests." *See* Resp. 1.  However, Defendants likewise fail to indicate to the Court any Mexican sovereign interest at stake, and the Court is unable to discern any sovereign interest at stake in this case.

Indeed, upon scrutinizing the Original Petition, the Court finds that the only reference to potential interests of or action by the Mexican government in relation to Plaintiff's conversion claim involves the Mexican government agency's tax audit of Plaintiff.[2]  *See* Original Pet. 13. Certainly, the Mexican government has an interest in completing the audit with access to all the necessary documents.  However, because Plaintiff's potential failure to comply with the audit poses no threat to Mexican sovereignty, the interest of the Mexican government in this suit is not so great that foreign relations are implicated by this single tax audit.  *See, e.g., Espinola-E*, 2001 WL 85834, at *1 (finding that a claim involving "the banana industry . . . an important segment of the economy in all of the countries at issue in these suits" did not invoke the federal common law of foreign relations because "these suits do not pose a threat to foreign sovereignty"); *Marathon Oil*, 115 F.3d at 320 (finding that the case did not implicate the federal common law of foreign relations because the "action does not strike at the sovereignty of a foreign nation" and

---

[2] The Original Petition does make several references to various actions taken in the Mexican courts—regarding possession of the Mexicali plant and an allegedly false arrest of Pedro Zaragoza—and alleges that "[d]ue process was violated under the law of the United Mexican States (Mexico)."  *See* Original Pet. 16.  However, these allegations are wholly irrelevant to a court's decision on the conversion claim or whether Plaintiff's request for injunctive relief should be granted, because the allegations do not bear on any element of conversion or any elements needed to prove that injunctive relief is warranted.  *See, e.g., Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (explaining that to establish a claim for conversion under Texas law, "[t]he plaintiff must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused"); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) ("To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.").

noting that the court was "unconvinced that this suit may impact severely the vital economic interests of a highly developed and flourishing industrial nation such as Germany"); *cf.*, *Torres*, 113 F.3d at 541-43 (finding federal jurisdiction based on the federal common law of foreign relations where the case involved 700 Peruvian citizens "seeking damages for activities and policies in which the [Peruvian] government actively has been engaged"); *Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338, 1356-59, 1364-65 (E.D. Tex. 1993) (finding federal jurisdiction based on the federal common law of foreign relations where the case involved contracts and negotiations in which the foreign sovereign participated).  Indeed, the Court finds that this suit, regarding an attempt to obtain documents needed in a single tax audit, will not "impact severely the vital economic interests" of Mexico, *see Marathon Oil*, 115 F.3d at 320, even if the business of Plaintiff is "an important segment of the economy," *see Espinola-E*, 2001 WL 85834, at *1.  Accordingly, the federal common law of foreign relations is not implicated in this case.  *See id.*; *Marathon Oil*, 115 F.3d at 320.

Defendants, however, rely on *Grynberg Production Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338 (E.D. Tex. 1993), in asserting that sovereign interests are at stake in this case.  *See* Notice of Removal 2; Resp. 5-6.  In *Grynberg*, the court found that plaintiff's request for injunctive relief implicated the federal common law of foreign relations where plaintiff asked the court to grant plaintiff rights to natural resources that the Republic of Kazakhstan had already granted to defendant.  *See Grynberg*, 817 F. Supp. at 1359.  The court explained that "any claim of interest in real property located in a foreign sovereign nation which is asserted over and above the rights of that sovereign" implicated the federal common law of foreign relations, because "[i]t is a question of international relations law whether a foreign sovereign has the sole power to control its natural resources."  *Id.* at 1359-60.  In the instant case, however, the interest of the

9

Mexican government in completing a single tax audit—a routine matter for a taxing authority—is not comparable to the Republic of Kazakhstan's interest in controlling and allocating its own natural resources—an interest closely aligned with the right of sovereignty—at issue in *Grynberg*. *See id.* at 1359. Further, in the instant case, Plaintiff is not asserting a right to the corporate documents "over and above the rights of that sovereign" nation of Mexico, but instead seeks such documents to further an audit begun by the Mexican government.

The *Grynberg* court also found that the plaintiff's conversion claim implicated the federal common law of foreign relations because "[t]o state a claim for conversion, [the plaintiff] must allege the unlawful and unauthorized nature of the acts of a foreign sovereign"—the Republic of Kazakhstan. *See id.* at 1364-65. Likewise, in *Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997), also cited by Defendants, the court found that the federal common law of foreign relations was implicated because plaintiffs were "seeking damages for activities and policies in which the government actively has been engaged." *Id.* at 543. However, in the instant case, unlike in *Grynberg* and *Torres,* Plaintiff does not allege that the government of Mexico was in any way involved in the events that led to the alleged conversion. Accordingly, the federal common law of foreign relations is not implicated in this case.

Furthermore, the foreign governments in both *Grynberg* and *Torres* both expressed strong interest in the litigation by writing to the court. In *Grynberg*, the Republic of Kazakhstan wrote the court and demanded that resolution of the issue of mineral rights take place in Kazakhstan. *See Grynberg*, 817 F. Supp. at 1356-57. In *Torres*, the nation of Peru "protested the lawsuit by filing a letter with the State Department and by submitting an amicus brief to this court." *See Torres*, 113 F.3d at 542. The Fifth Circuit noted in *Torres* that the fact "[t]hat Peru has injected itself into this lawsuit does not, standing alone, create a question of federal law," but

found that Peru's "vigorousness in opposing the action . . . alerted [the court] to the foreign policy issues implicated by this case." *Torres*, 113 F.3d at 542-43.  However, in the instant case, unlike in *Grynberg* and *Torres,* the government of Mexico has shown no such interest in the outcome of the case, nor have any other factors "alerted [the court] to the foreign policy issues implicated by this case."  *See id.*; *see also Espinola-E*, 2001 WL 85834, at *1 (finding the federal common law of foreign relations was not implicated where "none of the countries [at issue in the suits] is a party to, or has protested, these particular lawsuits").

Instead, this case is more similar to *Hyatt Corp. v. Stanton*, 945 F. Supp. 675 (S.D.N.Y. 1996), also cited by Defendants, in which the court found that the defendant's "vague[] claims that this case could affect Finland's right to regulate its banks" were not sufficient to support federal question jurisdiction.  *Id.* at 691.  The court found that the federal common law of foreign relations was not implicated because "any effect on Finland's regulatory conduct is incidental." *Id.*  In the instant case, Defendants arguments regarding the federal common law of foreign relations are even more nebulous than the defendant's arguments in *Hyatt*, as Defendants refer generally to "international issues" and "matters of international relations" but fail to point to any particular matters of international law or relations at issue in the case.  *See* Resp. 7-8. Furthermore, had Defendants argued that this case would affect Mexico's ability to engage in the tax audit, the effect on Mexico's conduct would be incidental as this case involves only a single tax audit.  Accordingly, this case, like *Hyatt*, does not involve the federal common law of foreign relations.  *See Hyatt*, 945 F. Supp. at 691.

Finally, Defendants argue that this case involves the federal common law of foreign relations because it will require a court to interpret foreign law—specifically, Mexican law.[3]  *See* Resp. 1, 7-8.  Defendants argue that, "[l]ike the right to title in foreign lands, . . . the right to corporate documents, allegedly owned by a Mexican corporation, made pursuant to Mexican laws, and required by Mexican law to be kept in a specific location . . . raises a federal question." *See id.* at 7-8.  However, even if Defendants are correct that this case will necessarily involve the interpretation of Mexican law, the fact that a case involves the interpretation of foreign law is not a basis for federal jurisdiction.  While federal courts may certainly apply foreign law, *see* Fed. R. Civ. P. 44.1, foreign law does not, in and of itself, create a basis for federal question jurisdiction. *See In re Hellas Telecomm. (Luxembourg) II SCA*, 535 B.R. 543, 565 (Bankr. S.D.N.Y. 2015) (explaining that the court must look to federal law to determine if it has subject matter jurisdiction, even if the applicable substantive law at issue is foreign law); *see also Exxon Mobil*, 545 U.S at 552 (explaining that federal courts are "courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute" (quoting *Kokkonen*, 511 U.S. at 377); 28 U.S.C. §§ 1331 (granting federal district courts jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States" but not those arising under foreign law). Further, although Defendants note that a company organized in a foreign country—Plaintiff—is involved in the lawsuit, the involvement of foreign individuals or entities is not a basis for federal question jurisdiction.  *See, e.g.*, *Aquafaith Shipping,* 963 F.2d at 809 (finding plaintiff's

---

[3] Although much of Defendants' argument in the Response regarding federal question jurisdiction centers on the importance of Mexican law in the case, the cases they cite pertain to international law.  Thus, it appears that Defendants may have confused or attempted to conflate foreign law with international law.  *See* Resp. 7-8. However, the two are not the same, as foreign law is the domestic law of a foreign nation, while international law governs relationships between nations.  *See Foreign Law, Black's Law Dictionary* (10th ed. 2014) (defining "foreign law" as "[t]he law of another state or of a foreign country"); *International Law, Black's Law Dictionary* (10th ed. 2014) (defining "international law" as "[t]he legal system governing the relationships between countries").

complaint, which alleged a unlawful settlement agreement, contained "no hint of the federal common law of foreign relations" despite the fact that plaintiff was foreign and case involved companies organized under foreign law).

Indeed, Defendants have pointed to no case law—and the Court has found none—holding that a case arises under federal law merely because it involves the interpretation of foreign law. Defendants cite *Hyatt* for the proposition that "when claims require the determination of some issue of international law or foreign relations, such as the act of state doctrine or the interpretation of foreign laws or regulations, a federal question exists." *See* Resp. 6 (citing *Hyatt*, 945 F. Supp. at 691). The *Hyatt* court, in explaining that federal common law of foreign relations was not implicated, did indeed state that the "defendant has failed to allege that the resolution of any of plaintiff's claims . . . requires the determination of some issue of international law of foreign relations, such as the act of state doctrine or the interpretation of foreign laws or regulations." *See Hyatt*, 945 F. Supp. at 691. Yet, the *Hyatt* court clearly indicated that a federal question only exists when claims "require[] the determination of some issue of international law or foreign relations," and only mentioned the interpretation of federal law as an example of when a case might involve an issue of international law or foreign relations. *See id.* The instant case involves only a dispute between private parties—between family members, in fact—and has no bearing on foreign relations between the United States and Mexico, even if the state court may need to interpret Mexican law in deciding the case.

Accordingly, this case does not involve the federal common law of foreign relations, and thus does not arise under federal law. As a result, the Court does not have subject matter jurisdiction over this case, and the Court must remand the case to state court.

C.      **Attorney's Fees**

Plaintiff also requests that the Court award costs, actual expenses, and attorney's fees incurred by Plaintiff as a result of Defendants' removal of this case to federal district court, pursuant to 28 U.S.C. § 1447(c).  *See* Mot. to Remand 9.  Plaintiff makes no further argument on behalf of its request for attorney's fees, and Defendants do not address this request in their Response.  *See generally id.*; Reply; Resp.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Absent unusual circumstances, courts should award costs and fees upon remand of a case "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).  There is no presumption for or against awarding fees.  *Admiral Ins. Co. v. Abshire,* 574 F.3d 267, 280 (5th Cir. 2009) (citing *Martin,* 546 U.S. at 140).

Here, Defendants' grounds for removal were not objectively reasonable because Plaintiff's state law conversion claim clearly does not arise under federal law.  Although Defendants argue that this case arises under the federal common law of foreign relations because it involves international law, this argument is not objectively reasonable when Defendants fail to indicate a single international law that is at issue in the case.  *See Fiume Indus., Inc. v. Am. Exp. Travel Related Servs. Co., Inc.*, No. CIV.A. 4:09-CV-591, 2009 WL 4667542, at *4 (S.D. Tex. Dec. 1, 2009) (finding that defendant had no objectively reasonable basis for removal where defendant made "no supporting legal argument").  Next, Defendants' argument that the case arises under the federal common law of foreign relations because it "implicates Mexican sovereign interests," is not objectively reasonable because this interfamilial dispute over the

14

possession of corporate documents implicates no foreign relations issues between the United

States and Mexico.  *See* Resp. 1.  Indeed, Defendants fail to point to a single sovereign interest at

stake in this litigation.  *See Fiume*, 2009 WL 4667542, at *4 (finding that defendant had no

objectively reasonable basis for removal where the basis for removal was not factually

supported).  Finally, Defendants' argument that the case arises under United States federal law

because it arises under the law of a foreign nation is not objectively reasonable because it is has

no foundation in case law or the statute governing the jurisdiction of federal courts.  *See id.*;

*Powerhouse Healthcare Mgmt., LLC v. Harris*, Civil Action No. SA-06-CA-0289 XR, 2006 WL

1851721, at *3 (W.D. Tex. June 26, 2006) (finding that defendant had no objectively reasonable

basis for removal where "[d]efendants failed to cite to a single case supporting either ground for

removal").

 Accordingly, because Defendants' basis for removal was not objectively reasonable, the

Court **GRANTS** Plaintiff's request for attorney's fees and costs.  *See Fiume Indus.*, 2009 WL

4667542, at *4 (awarding attorney's fees); *Powerhouse Healthcare*, 2006 WL 1851721, at *3

(awarding attorney's fees).

### 1.      Amount of attorney's fees

When determining the amount of fees that may be awarded upon remand, district courts

in the Fifth Circuit use the lodestar method.  *Halliburton Latin Am. SA v. Int'l Tech. Sols.*, No.

00–20842, 2001 WL 1013047, at *1 (5th Cir. 2001) (per curiam); *Fiume Indus*, 2009 WL

4667542, at *5.  This method involves two steps.  *See La. Power & Light Co. v. Kellstrom,* 50

F.3d 319, 323–24 (5th Cir. 1995).  First, the district court must determine a figure based on a

reasonable number of hours and a reasonable billing rate.  *Id.* at 324; *Fiume Indus.*, 2009 WL

4667542, at *5.  Then, the court may adjust that figure upward or downward based on its

consideration of twelve factors.  *See Cobb v. Miller,* 818 F.2d 1227, 1231 n.5 (5th Cir. 1987);

*Fiume Indus.*, 2009 WL 4667542, at *5.  In addition, contemporaneous billing records or other

sufficient documentation is customarily required to support a request for attorney fees.  *La.*

*Power & Light*, 50 F.3d at 324; *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP, 2016 WL

698130, at *2 (S.D. Miss. Feb. 19, 2016).

 Here, Plaintiff has not yet provided sufficient information to permit the Court to engage

in the lodestar analysis.  Therefore, before the Court awards a specific amount of attorney fees,

Plaintiff must submit proper documentation as specified in Local Rule CV–7(j) and follow all

other requirements set out in the Rule.  *See* Local Court Rule CV–7(j)(1).  Further, in accordance

with the Rule, prior to submitting such documentation, "[c]ounsel for the parties shall meet and

confer for the purpose of resolving all disputed issues relating to attorney's fees."  *See id.*  The

parties shall submit a joint report on the outcome of their conference on or before July 6, 2016.

 If the parties fail to resolve the issue by conference, Plaintiff shall submit, on or before

July 13, 2016, a detailed accounting of the hours its attorney expended as a result of Defendants'

attempted removal of this case, the hourly rate charged for this portion of the case, and sufficient

evidence to demonstrate that this rate is reasonable for the community.  If Defendants have any

objections to Plaintiff's requested amount of attorney fees, Defendants shall file these objections

on or before July 20, 2016.

## III. CONCLUSION

 For the foregoing reasons, Plaintiff's Motion, ECF No. 5, is **GRANTED** in part.

Plaintiff's requests for remand and for attorney's fees and costs are **GRANTED**, and Plaintiff's

request for an emergency hearing is **DENIED** as moot.  It is hereby **ORDERED** that the Clerk

shall **REMAND** the above-captioned case to the 41st District Court, El Paso County, Texas.

**IT IS FURTHER ORDERED** that the parties shall submit their joint report on the outcome of the attorney's fees conference on or before **July 6, 2016**.  If the parties fail to resolve the issue by conference, Plaintiff shall submit its report regarding attorney's fees, on or before **July 13, 2016**, and Defendants shall submit their objections, if any, on or before **July 20, 2016**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED** as moot.

The Clerk of Court shall close this case.

**SO ORDERED.**

**SIGNED this 21st day of June, 2016.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE